UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

NICHOLAS J. STEINKE,

                  Plaintiff,

v.                                           Case No. 17-cv-656-pp

BETH DITTMANN, *et al.*,

                  Defendants.

---

**ORDER SCREENING PLAINITFF'S THIRD AMENDED COMPLAINT (DKT. NO. 60), DISMISSING SOME DEFENDANTS AND SETTING DEADLINES FOR DISPOSITIVE MOTIONS**

---

At the time he filed this lawsuit, the plaintiff was incarcerated at Waupun Correctional Institution.[1] Dkt. No. 1. Representing himself, he filed the suit under 42 U.S.C. §1983, alleging that the defendants violated his civil rights at Dodge Correctional Institution. On May 2, 2019, the court allowed the plaintiff to file a third amended complaint. Dkt. No. 59.

I.     **SCREENING OF THE PLAINTIFF'S THIRD AMENDED COMPLAINT**

The Prison Litigation Reform Act ("PLRA") applies to this case because the plaintiff was incarcerated when he filed his original complaint. 28 U.S.C. §1915. The PLRA requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to

---

[1] It appears that the plaintiff was released to extended supervision on September 3, 2019. https://appsdoc.wi.gov/lop/detail.do. Prior to his release, he provided the court with his post-release address. Dkt. No. 63.

1

state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim under 42 U.S.C. §1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the defendant was acting under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

A.  Factual Allegations

At the time of the events he described in the third amended complaint, the plaintiff was an inmate at Dodge Correctional Institution. Dkt. No. 60 at 2.

The plaintiff alleges that during his "intake" at Dodge, he told defendant RN Zacharias that he had a seizure disorder (and he asserts that Dodge was

2

well aware of the disorder). Id. at 2. Zacharias made a notation on the plaintiff's medical file and he was given a lower bunk while he was housed on Unit 19. Id.

On June 27, 2016, the plaintiff was moved from Unit 19 to Unit 24. Id. at 3. Upon arrival on Unit 24, correctional officer Krueger told the plaintiff to "go to cell 28 A (top bunk)." Id. The plaintiff told Krueger and correctional officer Chapman that he was diagnosed with a seizure disorder, that he couldn't sleep on a top bunk and that he had a lower bunk restriction. Id. Krueger responded that the lower bunk restriction "was not on [the plaintiff's] card." Id. The plaintiff asked Krueger to "check WICS,"[2] and asked to speak to a sergeant. Id.

The plaintiff says that he and Krueger both spoke with correctional officer Breselow and explained the situation. Id. The plaintiff says that he "was then told to fill out a[n] HSU request slip;" he does not say who told him to do this. Id. The plaintiff asked "them"—presumably Krueger and Breselow—to call the Health Services Unit so they could "confirm this" and "correct the situation." Id. at 3-4. The plaintiff asserts that "this request was denied." Id. at 4. The plaintiff says that he also asked to speak to a "white shirt," but that this request also was denied. Id. The plaintiff "was then given a direct order to go to [his] cell" and he followed the order. Id. He does not say who gave him the order.

The plaintiff later came out of his cell for lunch. Id. After lunch, the plaintiff went to the officers' desk and spoke to Krueger and Chapman, again asking them to call HSU; the plaintiff says he told them that he'd had a seizure

---

[2] The Wisconsin Integrated Corrections System. www.marquesware.com/index.php/wisconsin.

while in his bunk and that he was afraid it would happen again and he'd fall out. Id. The plaintiff asserts that again, "they" stated that they would not call HSU; he again asked to speak to a white shirt and again that request was denied. Id. The plaintiff again was given a direct order to "lock in" his cell; he followed the order. Id.

About six hours after arriving in Unit 24, the plaintiff had a seizure while lying on his bed. Id. He fell out of his bed and landed on his tailbone "extremely hard." Id. at 4-5. The plaintiff's cellmate pounded on the door to get the attention of "staff." Id. the plaintiff says that the staff took their time to respond, and when they arrived, asked his cellmate why he was pounding on the door. Id. at 5. When the cellmate explained that the plaintiff had suffered a seizure, the staff "then began to belittle [the plaintiff], make fun of [him] [and his] medical condition on the tier which could be heard by other inmates." Id.

Minutes later, nurses Burling and Schueler responded. Id. Schueler began moving the plaintiff and trying to force the plaintiff to get up, telling him that if he wanted a lower bunk, he should just get up. Id. The plaintiff states that Schueler's movements caused him pain and could have paralyzed him. Id. The plaintiff says he told Schueler that he couldn't move, and that he and his cellmate both told her that he had just fallen from the top bunk. Id. The plaintiff "called out" to Burling for help, to have Schueler stop trying to move him; he says that Burling did and said nothing. Id. Schueler finally gave up on trying to force the plaintiff to his feet. Id.

4

The plaintiff says that "Waupun Memorial" arrived to take him to Waupun Memorial Hospital, where "they" stabilized his neck, put on a neck brace and put him on a stretcher. Id. The plaintiff says that when he got in the ambulance, correctional officer Burdick approached him and said, "if you try to do something about this there will be consequences." Id. at 5-6. At the hospital, the plaintiff was diagnosed with "contusions of the neck, back, spine, strained neck [and] head." Id. at 6. The plaintiff states "this was said to be consistent of that to a fall victim or car accident victim." Id.

The plaintiff returned to Dodge and "was brought back to Unit 24 in a wheelchair [and] was told to go to his cell [,] which was on top tier." Id. He protested about this to correctional officers Kiesow and Hannon; he says both had seen him return from the hospital in a wheelchair and both knew that he'd fallen from the top bunk and been injured. Id. He told them he needed a "lower tier" due to his injuries and to the seizure disorder. Id. The plaintiff says "[t]his was denied." Id. He also asked to speak with a white shirt; he says that this request was denied and he was given a direct order to lock in. Id. The plaintiff says that he was forced to walk to the top tier, which caused him pain. Id.

The plaintiff states that he filed numerous requests about the incident which went unanswered. Id. He says that "all conspired by presenting facts that are fraudulent, disregarding a persons safety & medical condition, failing to provide a proper investigation, not interviewing [his] witnesses or allowing [him] to present evidence or be heard violating [his] due process." Id. The plaintiff alleges that Schueler gave a "completely different [and] false statement

5

in her incident report as the one given by CO Krueger." Id. The plaintiff alleges that Dittmann, without conducting an interview or investigation, gave a "fraudulent statement" recommending dismissal of the plaintiff's inmate complaint. Id. at 6-7. Similarly, he alleges that Krueger and Burdick gave false statements regarding the incident. Id. at 7. The plaintiff says that his cellmate wrote a sworn statement, which was turned over to J. Bovee; he alleges that Bovee did not conduct an investigation. Id. The plaintiff alleges O'Donnell, Labelle, Hompe and Falke "conducted no investigation." Id. The plaintiff states that this incident is similar to prior incidents where "many of the same defendants," whom he also refers to as "conspirators," presented false statements and evidence in order to dismiss his inmate complaints about injuries from his seizures. Id. at 7-8.

B.     Legal Analysis

The plaintiff asks to proceed with the following claims: (1) Eighth Amendment deliberate indifference; (2) Fourteenth Amendment due process; (3) Fourteenth Amendment equal protection; (4) civil conspiracy; and (5) violation of the the Americans with Disabilities Act ("ADA"). Id. at 9.

1.     *Eighth Amendment Deliberate Indifference*

Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they display "deliberate indifference to serious medical needs of prisoners." Estelle v. Gamble, 429 U.S. 97, 104 (1976). "[T]he Eighth Amendment safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any

6

penological purpose.'" Petties v. Carter, 836 F.3d 722, 727 (7th Cir. 2016) (quoting Estelle, 429 U.S. at 103)). "To determine if the Eighth Amendment has been violated in the prison medical context, [the court] perform[s] a two-step analysis, first examining whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual defendant was deliberately indifferent to that condition." Id. (citing Farmer v. Brennan, 511 U.S. 825, 843 (1994)).

The plaintiff states that he has a seizure disorder, which is an objectively serious medical condition. Hollins v. Godinez, No. 14-CV-00795-MJR, 2014 WL 6790253, at *2 (S.D. Ill. Dec. 2, 2014). Further, the plaintiff states that correctional officers Krueger, Breslow, Kiesow, Hannon and Chapman, all knew about his seizure disorder; he either states directly, or implies, that all of them refused to honor his lower bunk restriction, or to contact HSU or check the WICS system to see if he had one. Dkt. No. 60 at 3-6. He states that nurse Schueler knew about his seizure disorder and his injuries and tried to force him to get up even though he was in severe pain. Id. at 5-6. He says that nurse Burling watched as Schuler caused him pain, heard his cries for help, but did nothing. Id. at 5. These allegations are sufficient, at this early stage, to state an Eighth Amendment deliberate indifference claim against Krueger, Breselow, Kiesow, Hannon, Chapman, Burling and Schueler.

The court will dismiss nurse Zacharias as a defendant. The plaintiff's only allegation against her is that she issued him a lower bunk restriction during the intake process. Dkt. No. 60 at 2. The plaintiff acknowledges that

7

Zacharias "marked this down on [his] sheet" and that he received a lower bunk while in Unit 19. Id. Zacharias is not responsible for the actions of the correctional officers in Unit 24, who allegedly refused to honor the lower bunk restriction. The plaintiff has not stated a claim that Zacharias was deliberately indifferent to his serious medical need.

        2.     *Fourteenth Amendment Due Process*

To state a Fourteenth Amendment due process claim, the plaintiff must allege that (1) he has a liberty or property interest that the state has interfered with; and (2) the procedures he was afforded upon that deprivation were constitutionally deficient. Scruggs v. Jordan, 485 F.3d 934, 939 (7th Cir. 2007) (citing Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460, 109 (1989)). "[T]he due process clause does not require states to provide meaningful review of prisoner complaints." Reimann v. Frank, 397 F. Supp. 2d 1059, 1081 (W.D. Wis. 2005).

The plaintiff alleges that Dittman failed to conduct an investigation and gave a fraudulent statement about what happened, and that she recommended that his complaint be dismissed. Id. at 6-7. He alleges that Bovee, O'Donnell, Labelle, Hompe and Falke all failed to conduct an investigation, deprived him of his right to be heard and covered up what happened. Id. at 7.

The third amended complaint does not explain who Dittman, Bovee, O'Donnell, Labelle, Hompe and Falke are. Were they inmate complaint examiners? Supervisors? Correctional officers? The plaintiff does not explain what responsibility they had for investigating his claims. He does not say to

8

whom they allegedly made false statements, or how the alleged false statements resulted in a violation of his rights. To the extent that the plaintiff alleges that any of these defendants mishandled any inmate complaint he may have filed, "[p]rison grievance procedures are not mandated by the Due Process Clause," and any alleged mishandling of grievances "by persons who did not otherwise cause or participate in the underlying conduct states no claim." Owens v. Hinsley, 635 F.3d 950, 953 (7th Cir. 2011). It appears that perhaps the plaintiff was subjected to some kind of discipline; he indicates that he was allowed to be continually held in a segregation cell with severe injuries. Dkt. No. 60 at 7. But he does not explain how these defendants had anything to do with that discipline. The court will dismiss Dittman, Bovee, O'Donnell, Labelle, Hompe and Falke as defendants.

3. *Fourteenth Amendment Equal Protection*

"Disabled individuals, like any class, are protected by the Equal Protection Clause of the Fourteenth Amendment." Stevens v. Ill. Dept. of Transp., 210 F.3d 732, 737 (7th Cir. 2000). To state an equal protection claim, a plaintiff "must establish that a defendant acted with a discriminatory purpose and discriminated against [him] because of [his] membership in an identifiable group." Wileman v. Sch. Dist. of Janesville, Case No. 17-cv-531-jdp, 2018 WL 1401261, at *3 (W.D. Wis. Mar. 19, 2018).

The plaintiff alleges that the defendants discriminated against him under the "ADA"—the Americans with Disabilities Act by refusing to accommodate his disability, and he says that "this was not the case for others similarly situated."

9

Dkt. No. 50 at 3. He says that he was "treated differently than others similarly situated as [him]." Id. at 4. He says that "all parties" were aware of his injuries and refused to accommodate them, which was not true "for others similarly situated." Id. at 6.

For the sake of argument, the court will assume that having a seizure disorder placed the defendant in the protected class of disabled individuals. But the plaintiff's conclusory assertions that the defendants treated him differently from "others similarly situated" are not sufficient to state an equal protection claim. To whom was the plaintiff similarly situated? Were there inmates at Dodge who did not have disabilities whose lower bunk restrictions these defendants accommodated? The plaintiff has not stated a Fourteenth Amendment equal protection claim against any of the defendants.

    4. *Civil Conspiracy*

A civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means." Beaman v. Freesmeyer, 776 F.3d 500, 510 (7th Cir. 2015). To state a conspiracy claim under §1983, the plaintiff must allege that (1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights. Id. (citing Scherer v. Balkema, 840 F.2d 437, 441 (7th Cir. 1988)). "Vague and conclusory allegations of the existence of a conspiracy are not enough to sustain a plaintiff's [pleading] burden[.]" Evers v. Reak, 21 F. App'x 447, 450 (7th Cir. 2001). Instead, "a complaint must contain factual allegations suggesting that

the defendants reached a meeting of the minds." Id. The plaintiff must "allege the 'what, when, why, and how' of the defendants' supposed agreement to deprive him of his constitutional rights." Id. (quoting Brokaw v. Mercer Cty., 235 F.3d 1000, 1016 (7th Cir. 2000)).

The plaintiff repeatedly alleges that the defendants all were aware of his seizure disorder and injuries, and he uses the word "conspiracy" over and over. But using the word "conspiracy" is not enough; the plaintiff must allege specific facts about who conspired with whom, what they conspired to do, when they conspired to do it, why they did so and how. While the plaintiff's allegations suggest that various individuals at Dodge may have independently showed deliberate indifference toward his medical condition, they do not suffice to show that all of the defendants had a "meeting of the minds" to deprive him of his constitutional rights. The plaintiff appears to suggest that the sheer number of defendants who allegedly were deliberately indifferent to his medical needs shows that there must have been an agreement among them. Again, such conclusory allegations are not sufficient to state a claim for conspiracy.

     5.    *Americans with Disabilities Act*

"Public entities, such as correctional facilities, must 'take reasonable measures to remove architectural and other barriers'" that deny individuals access to public services. Clemons v. Dart, 168 F. Supp. 3d 1060, 1065–66 (N.D. Ill. 2016) (quoting Tennessee v. Lane, 541 U.S. 509, 531(2004)). To state a claim under the Americans with Disabilities Act ("ADA"), the plaintiff must allege that (1) he is a "qualified individual with a disability;" (2) that he was

denied "the benefits of the services, programs, or activities of a public entity" or otherwise subjected to discrimination by such an entity, and (3) that the denial or discrimination was "by reason of his disability." Wagoner v. Lemmon, 778 F.3d 586, 592 (7th Cir. 2015) (quoting Love v. Westville Corr. Ctr., 103 F.3d 558, 560 (7th Cir.1996)).

A qualified individual must have a disability which the Act defines as a "physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. §12102(2)(A). A major life activity includes "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." Hamm v. Runyon, 51 F.3d 721, 724 (7th Cir.1995). A qualified individual must allege that he was "excluded from or denied access to" any prison service, program or activity. Doyle v. Fairman, No. 96 C 2572, 1997 WL 610332, at *5 (N.D. Ill. Sept. 29, 1997). "The ADA does not provide a remedy for inconvenience." Id. (citing Bryant v. Madigan, 84 F.3d 246, 248 (7th Cir.1996)).

The plaintiff's seizure disorder is a qualified disability under the ADA. Lewis v. Truitt, 960 F. Supp. 175, 178 (S.D. Ind. 1997) ("For example, persons who have epilepsy, and a variety of other disabilities, are frequently inappropriately arrested and jailed because police officers have not received proper training in the recognition of and aid of seizures."). But the plaintiff has not alleged that the Department of Corrections denied him the "benefits of the services, programs, or activities of a public entity" due to his seizure disorder. To the contrary, the plaintiff alleges that Dodge had a protocol for inmates with

12

seizure disorders (*i.e.*, giving those inmates a lower bunk restriction) and that specific individuals at Dodge did not honor this policy when they moved him from Unit 19 to Unit 24. The plaintiff's allegations state a deliberate indifference claim against specific individuals, but not an ADA claim against officials at Dodge. Jaros v. Ill. Deptt of Corr., 684 F.3d 667, 670 (7th Cir. 2012) ("[E]mployees of the Department of Corrections are not amenable to suit under the Rehabilitation Act or the ADA."); see also Boston v. Dart, No. 14 CV 8680, 2015 WL 4638044, at *2 (N.D. Ill. Aug. 4, 2015) (noting that the ADA only allows official capacity claims involving the entire public entity, not individual capacity claims against specific people). Accordingly, the plaintiff cannot proceed with claims under the ADA against any of the defendants.

      6.    *Retaliation*

The one defendant the court has not discussed is Burdick. The plaintiff alleges that as he was getting into the ambulance after his fall, Burdick approached him and told him that if he "tried to do something about this"—presumably the fall—"there would be consequences." Dkt. No. 60 at 5-6. The plaintiff also alleges that at some point, Burdick stated he had spoken with medical staff who told him that the plaintiff hadn't ever reported having a seizure, and that Burdick had interviewed the plaintiff's cellmate, who had said he'd been half asleep and heard a thump. Id. at 7. This sounds like a First Amendment retaliation claim; the plaintiff appears to imply that Burdick threatened him to prevent him from filing an inmate complaint, and then made

statements to someone that made it sound as if the plaintiff hadn't had a seizure.

To state a retaliation claim, and plaintiff must show that he engaged in activities protected by the First Amendment, that he "suffered a deprivation that would likely deter First Amendment activity in the future[,]" and that the First Amendment activity was "at least a motivating factor" in the defendant's decision to take a retaliatory action. Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009) (quoting Woodruff v. Mason, 542 F.3d 545, 551 (7th Cir. 2008)).

The plaintiff's allegations against Burdick do not state a First Amendment retaliation claim. He has not alleged that Burdick deprived him of anything. He has not alleged that Burdick exacted consequences on him for saying something about the seizure incident. While he has alleged that Burdick threatened retaliation, he has not alleged that Burdick actually retaliated. The court will dismiss Burdick as a defendant.

## II. CONCLUSION

The court **DISMISSES** defendants Dittmann, Bovee, Zacharias, Falke, Burdick, O'Donnell, Hompe and Labelle as defendants.

Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the complaint and this order have been electronically transmitted to the Wisconsin Department of Justice for service on defendants Krueger, Burling, Breselow, Schueler, Kiesow, Hannon and Chapman.

As the court indicated at the status conference on May 2, 2019, discovery in this case is **CLOSED**. Dkt. Nos. 59, 61.

The court **ORDERS** that any party wishing to file a motion for summary judgment must file that motion, along with supporting materials, by the end of the day on **March 20, 2020**.

Any party opposing a motion for summary judgment must file a response within thirty (30) days of the filing of the motion. The moving party must file any reply in support of the motion within fourteen (14) days of the date of the response.

Dated in Milwaukee, Wisconsin this 29th day of January, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**
